1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SIERRA FOOTHILLS PUBLIC UTILITY DISTRICT, | ) ) ) | CV F 05-0736  AWI SMS (NEW DJ) |
| Plaintiff, | ) ) ) | ORDER ON MOTION FOR INTERLOCUTORY REVIEW |
| v. | ) ) ) | OR, IN THE ALTERNATIVE, ENTRY OF FINAL |
| CLARENDON AMERICA INSURANCE COMPANY and DOES 1 through 100, | ) ) ) ) | JUDGMENT AND REQUEST FOR IMMEDIATE STAY |
| Defendants. | ) ) ) | (Document #92) |

This removed action concerns a Public Officials Liability Coverage insurance policy that Defendant issued to Plaintiff.  Plaintiff alleges that Defendant wrongfully denied defense costs and indemnity under the policy for a claim based on a lawsuit by Plaintiff's former general manager.  This court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

PROCEDURAL HISTORY

On May 5, 2005, Plaintiff Sierra Foothills Public Utility District ("SFPUD") filed a Complaint in the Fresno County Superior Court against Defendant Clarendon America Insurance Company ("Clarendon") for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and declaratory relief.  On June 7, 2005, Clarendon removed the case to this

1    Court.

2        On March 17, 2006, Clarendon filed its motion for summary judgment. Clarendon

3 contended that it did not have a duty to defend the underlying action. Consequently, Clarendon

4 argued, SFPUD's claims for breach of contract, bad faith, and fraud also fail as a matter of law.

5 On March 27, 2006, SFPUD filed its motion for partial summary judgment as to the issue of

6 Clarendon's duty to defend. On May 17, 2006, the court issued an order granting SFPUD's

7 motion for partial summary judgment holding that, as a matter of law, Clarendon had a duty to

8 defend SFPUD in the underlying lawsuit as of June 3, 2003.

9        On May 25, 2005, Clarendon filed its motion for interlocutory review of the court's order

10 of partial summary judgment under 28 U.S.C. § 1292(b) or, in the alternative, for entry of final

11 judgment under Rule 54(b) of the Federal Rules of Civil Procedure to allow immediate appeal.

12 Clarendon contends that interlocutory review is appropriate because it would advance the

13 litigation by expediting appellate review of controlling legal issues. In the alternative, Clarendon

14 argues that the court should enter final judgment as to the duty to defend claims because the

15 partial summary judgment order is final and there is no just reason for delay. In the event the

16 court certifies an issue for interlocutory review or enters a final judgment as to some of SFPUD's

17 claims, Clarendon requests a stay of this action pending resolution of the appeal. SFPUD

18 opposes all three requests.

19                               **FACTS**

20        SFPUD is the named insured under Public Officials Liability Coverage Policy Number

21 HX00001199 (the "Policy") issued by Clarendon. The Policy was effective from December 28,

22 2001, to December 28, 2003. Section I.1 of the Policy provides coverage, in relevant part, as

23 follows:

24             We Agree:
                . . .
25             B. With the **"Governmental Entity"** that if, during the **"policy**
            **period,"** any **"claim"** or **"claims"** are first made against the
26             **"Insured,"** individually or collectively for a **"wrongful act,"** we
            will pay in accordance with the terms of this policy, and on behalf

27

28                             2

of the **"Governmental Entity,"** all **"loss"** which the
**"Governmental Entity"** shall become legally obligated to pay or
for which the **"Governmental Entity"** may be required by law to
indemnify the **"Insured"**; . . . .

Sommer Decl. Ex. A (emphasis in original).

On April 17, 2003, David E. Englert filed a lawsuit against SFPUD in Madera County

Superior Court, Case No. MCV 020596.  On or about June 3, 2003, SFPUD  tendered the

underlying action to Clarendon for defense and indemnification.

The complaint in that action (the "Underlying Complaint") contained two causes of

action:  for breach of contract and for wrongful termination in violation of public policy.  The

Underlying Complaint alleges that SFPUD employed Englert as its General Manager, for which

Englert received salary and benefits.  The Underlying Complaint alleges that, on or about

October 17, 2002, SFPUD wrongfully terminated Englert without good cause and ceased paying

his wages and benefits.  According to the Underlying Complaint, Englert was fired for refusing to

cooperate in a scheme by which SFPUD made payments to individuals who had not provided any

benefit to SFPUD.  The Underlying Complaint details that Englert was terminated after he

refused to authorize such payments and because he contacted SFPUD's bank to prevent it from

disbursing funds to certain individuals.

The Underlying Complaint alleges that after Englert's termination, SFPUD falsely

accused Englert of financial improprieties with public funds, publicly disclosed privileged

employment matters, refused to return Englert's personal property, attempted to have Englert

arrested, and circulated false rumors that Englert would soon be arrested and that he was

dishonest.

On or about March 19, 2004, Englert won a judgment of $1,765,943 in the underlying

action.  SFPUD appealed the judgment.  At the time of the motions for summary judgment, the

appeal was still pending.

3

**LEGAL STANDARDS**

**A.  28 U.S.C. § 1292(b)**

Under 28 U.S.C. § 1292(b),[1] a district court may certify an interlocutory order for appeal where it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and if "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Within ten days of this certification, a party may file an application for an appeal with the Court of Appeals, which has discretion to permit an appeal from the order.  28 U.S.C. § 1292(b).

The Ninth Circuit's guidance as to what constitutes a controlling question of law is minimal.  The issue need not be "dispositive of the lawsuit in order to be regarded as controlling" but it cannot be "collateral to the basic issues of [the] case."  United States v. Woodbury, 263 F.2d 784, 787-88 (9th Cir. 1959).  The Ninth Circuit has cited approvingly to the Third Circuit's finding that "'at the very least, a controlling question of law must encompass every order which, if erroneous, would be reversible error on final appeal.'"  In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982) (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3rd Cir. 1974)).

It appears that a "question of law" means a "pure question of law," not a mixed question of law and fact or an application of law to a particular set of facts.  See Ahrenholz v. Bd. of

---

[1]In its entirety, 28 U.S.C. § 1292(b) provides as follows:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order:  *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

4

Trustees, 219 F.3d 674, 675-77 (7th Cir. 2000).  Chief Judge Posner, writing for the Seventh

Circuit, explained that in the context of § 1292(b), the term "'question of law' means an abstract

legal issue rather than an issue of whether summary judgment should be granted." Id. at 677.

> We think [Congress] used "question of law" in much the same way
> a lay person might, as referring to a "pure" question of law rather
> than merely to an issue that might be free from a factual contest.
> The idea was that if a case turned on a pure question of law,
> something the court of appeals could decide quickly and cleanly
> without having to study the record, the court should be enabled to
> do so without having to wait till the end of the case.

Id. at 676-77.

**B.  Rule 54(b)**

Rule 54(b)[2] of the Federal Rules of Civil Procedure authorizes the district court in certain

circumstances to enter a final judgment as to "one or more but fewer than all of the claims or

parties."  First, the district court must determine that it has before it a "final judgment" that is

"an ultimate disposition of an individual claim entered in the course of a multiple claims action."

Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7, 100 S. Ct. 1460, 64 L. Ed.2d 1 (1980)

(quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436, 76 S. Ct. 895, 100 L. Ed. 1297

(1956)).

If the district court finds that the judgment is final, it then must determine whether there

---

[2]Rule 54(b) of the Federal Rules of Civil Procedure reads, in its entirety, as follows:

> (b) Judgment Upon Multiple Claims or Involving Multiple Parties.
> When more than one claim for relief is presented in an action,
> whether as a claim, counterclaim, cross-claim, or third-party claim,
> or when multiple parties are involved, the court may direct the
> entry of a final judgment as to one or more but fewer than all of the
> claims or parties only upon an express determination that there is
> no just reason for delay and upon an express direction for the entry
> of judgment.  In the absence of such determination and direction,
> any order or other form of decision, however designated, which
> adjudicates fewer than all the claims or the rights and liabilities of
> fewer than all the parties shall not terminate the action as to any of
> the claims or parties, and the order or other form of decision is
> subject to revision at any time before the entry of judgment
> adjudicating all the claims and the rights and liabilities of all the
> parties.

1   is any just reason for delay. Id. at 8.  The court should determine whether, in the interest of

2   sound judicial administration, the time is appropriate to enter a final decision on less than all of

3   the claims. Id.  In making this decision, the court should take into account judicial administrative

4   interests as well as equitable concerns with an eye to preserving "the historic federal policy

5   against piecemeal appeals." Id. (quoting Sears, 351 U.S. at 438).  The Ninth Circuit has noted

6   that Rule 54(b) judgments "must be reserved for the unusual case in which the costs and risks of

7   multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced

8   by pressing needs of the litigants for an early and separate judgment as to some claims or

9   parties." Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d 962, 965 (9th Cir. 1981).  It is

10  appropriate for the court to consider such factors as "whether the claims under review were

11  separable from the others remaining to be adjudicated and whether the nature of the claims

12  already determined was such that no appellate court would have to decide the same issues more

13  than once even if there were subsequent appeals." Curtiss-Wright, 446 U.S. at 8.  Similarity of

14  the issues that will remain pending in the trial court to those in the claims on which immediate

15  judgment is sought weighs heavily against the entry of judgment. Morrison-Knudsen, 655 F.2d

16  at 965.  When such similarity exists, entering a Rule 54(b) order is proper only when the court

17  makes further specific findings that it is doing so to "avoid a harsh and unjust result." Id.

18                              **DISCUSSION**

19  **A.  Interlocutory Appeal under 28 U.S.C. § 1292(b)**

20          Clarendon contends that an interlocutory appeal is appropriate to decide controlling legal

21  issues on which the court based its order granting partial summary judgment.

22          Clarendon argues that the court's "interpretation of the 'insured v. governmental entity'

23  exclusion" with respect to wrongful termination claims is a proper candidate for interlocutory

24  review. Mot. 3:7-9.  In opposing the motion for partial summary judgment, Clarendon had

25  argued that the insured-versus-government-entity exclusion foreclosed the possibility that

26  SFPUD faced covered liability.  Clarendon contended that Englert, the plaintiff in the underlying

27

28                                          6

1    action, was an employee of SFPUD, which placed him within the scope of the exclusion.  The

2    court found, however, that materials tendered to Clarendon raised the possibility that Englert was

3    an independent contractor, not an employee of SFPUD, which would make the exclusion

4    inapplicable to him.  Clarendon at no point contended that the exclusion could apply to Englert in

5    the case that he was an independent contractor.

6           Nor do the cases Clarendon cites to demonstrate how other courts have applied the

7    insured-versus-government-entity exclusion feature an interpretation of a legal question that

8    would call for a different result in this case.  Both cases Clarendon cites as alternative

9    interpretations of the exclusion discuss only whether suits by former employees are excluded

10   from coverage.  See Foster v. Ky. Hous. Corp., 850 F. Supp. 558, 561 (E.D. Ky. 1994) (former

11   director's suit for wrongful termination excluded under "insured vs. insured" exclusion); Miller

12   v. ACE USA, 261 F. Supp. 2d 1130, 1139 (D. Minn. 2003) ("insured v. insured exclusion"

13   precluded coverage of claims arising from former employee's termination).  Applying those

14   cases' interpretations to the exclusion in this case would not change the propriety of this court's

15   grant of partial summary judgment.  Even if the insured-versus-government-entity exclusion in

16   this case precludes coverage of suits by former employees, the possibility for coverage

17   nevertheless existed at the time SFPUD tendered defense to Clarendon.  This is because the court

18   found that the materials SFPUD tendered raised the possibility that Englert was an independent

19   contractor, not an employee.  Clarendon does not contend that the court misapplied the law

20   concerning independent contractor status.  Because employing the legal interpretation of the

21   exclusion that Clarendon suggests would not affect the court's holding, this issue is not a

22   controlling question of law.

23          Clarendon asserts that the court's order misinterprets another controlling legal issue by

24   holding that "a duty to defend may be found based on claims that are not and which were not the

25   type and nature of those asserted by the underlying plaintiff."  Mot. 2:27-3:1.  It seems that

26   Clarendon is reiterating its contention that its duty to defend does not arise based on potential

27

28                                            7

1   causes of action that the underlying plaintiff does not bring.  In other words, Clarendon urges that

2   SFPUD cannot face potential liability for a cause of action that Englert did not plead, even if he

3   alleged facts that would support such a cause of action.  Clarendon contends, without

4   explanation, that the court's interpretation of the law is inconsistent with the rule set forth in

5   Gunderson v. Fire Insurance Exchange ("Gunderson"), 37 Cal. App. 4th 1106, 1114 (1995).

6       Similarly, Clarendon contends, without further explanation, that "there is a controlling

7   question of law regarding whether an insured can change its position regarding the facts in

8   connection with an underlying action after a judgment is entered to create coverage."  Mot. 4:2-3.

9    This claim is reminiscent of Clarendon's argument in opposition to partial summary judgment

10  that a potential claim for conversion did not trigger a duty to defend because SFPUD "never

11  advised" Clarendon of potential liability for conversion and did not seek reconsideration of

12  Clarendon's denial on the basis of a potential conversion claim.  See Clarendon's Opp. to Mot.

13  for Partial Summ. J. 35:12-18.  Clarendon also cited Gunderson in support of this argument,

14  claiming that it must not "speculate about unpled claims" that might arise in the underlying

15  action.  Id. at 35:14-16.

16      A district court may certify an interlocutory appeal under 28 U.S.C. § 1292(b) only for a

17  question of law "as to which there is substantial ground for difference of opinion."  Id.  Thus,

18  where the law at issue is clear, certifying an appeal under that section is improper.  James Wm.

19  Moore, Moore's Federal Practice § 203.31[4] (3d ed. 2006); see Burrell v. Bd. of Trs. of Ga.

20  Military Coll., 970 F.2d 785, 789 (11th Cir. 1992).

21      Only a strained and countertextual reading of Gunderson can create the appearance of

22  "substantial ground for difference of opinion" regarding the role of unpled claims in triggering a

23  duty to defend.  Gunderson did not limit insurers' duty to defend to causes of action explicitly

24  pled in the underlying complaint.  In its moving papers in support of this motion, Clarendon has

25  not presented any other authority, or even cited any language from Gunderson, that supports its

26  reading.

27

28                                                  8

1    The court is unaware of, and Clarendon does not cite, any authority suggesting a basis for

2    divergent opinions about the meaning of <u>Gunderson</u>'s holding: "An insured may not trigger the

3    duty to defend by *speculating about extraneous 'facts'* regarding potential liability or ways in

4    which the third party claimant might amend its complaint at some future date." <u>Gunderson</u>, 37

5    Cal. App. 4th at 1114 (emphasis added). <u>Gunderson</u> speaks only to the situation where a court

6    errs by finding a potential for coverage based on facts that the underlying plaintiff did not plead

7    and that were not otherwise tendered to the insurer. <u>Id.</u>

8        <u>Gunderson</u> does not foreclose a duty to defend where facts alleged in the underlying

9    complaint demonstrate a potential for covered liability for a cause of action that has not been

10   pled. To the contrary, as this court pointed out in its order granting partial summary judgment,

11   the Supreme Court of California has reaffirmed the well-established rule that the insurer may be

12   required to defend in circumstances where "the complaint might be amended to give rise to a

13   liability that would be covered under the policy." <u>Montrose Chem. Corp. v. Superior Court</u>, 6

14   Cal. 4th 287, 299 (1993) (citing <u>Gray v. Zurich Ins. Co.</u>, 65 Cal. 2d 263, 275-76 (1966) ). Nor

15   does any language in <u>Gunderson</u> cut against the insurer's well-established duty to investigate the

16   complaint and any other materials tendered to it to determine whether the insured potentially

17   faces covered liability. <u>See id.</u> at 295-296. <u>Gunderson</u> simply follows the California rule that an

18   insurer's duty to defend can be triggered by the facts alleged in the complaint and any other facts

19   that appear in the materials that the insured tenders. <u>See id.</u> at 296. Clarendon's bald assertion

20   that this court's interpretation of <u>Gunderson</u> is incorrect does not establish that "there is

21   substantial ground for difference of opinion" as to the controlling law on this issue. <u>See</u> 28

22   U.S.C. § 1292(b).

23   **B. Final Judgment under Rule 54(b)**

24       In the alternative to certifying the duty to defend issue for interlocutory appeal, Clarendon

25   asks for an entry of final judgment as to the duty to defend claims pursuant to Rule 54(b).

26       There is no dispute as to whether the court's order constitutes a final judgment for

27

28                                                      9

1    purposes of Rule 54(b).  It appears that the court's summary judgment order is final at least with

2    respect to the defense costs aspect of the breach of contract claim and with respect to the

3    declaratory relief regarding Clarendon's duty to defend.

4        Next, the court must determine whether the issues subject to Rule 54(b) judgment are so

5    similar to the issues that would remain before the court as to weigh against such an action.  There

6    is a strong likelihood that determining the merits of SFPUD's second cause of action for breach

7    of the covenant of good faith and fair dealing will significantly overlap with a decision regarding

8    Clarendon's duty to defend.  See Compl. 6:6-7:21.  The bad faith claim turns, in part, on

9    Clarendon's decision to deny SFPUD a defense.  A court deciding that issue will need to

10    determine whether Clarendon acted "without proper cause"in refusing such coverage.  See

11    Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 574 (1973).  The inquiry into the reasonableness of

12    the insurer's conduct in denying a policy benefit requires the court to determine whether the legal

13    position taken by the insurer was reasonable.  Morris v. Paul Revere Life Ins. Co., 109 Cal. App.

14    4th 966, 973 n.1 (2003).  This inquiry "depends entirely on an analysis of legal precedent and

15    statutory language."  Id.  An appellate court reviewing the bad faith claim will have to review

16    various aspects of California law regarding duty to defend and determine whether Clarendon

17    reasonably decided to deny SFPUD a defense.  Such a determination substantially overlaps with

18    the decision of whether the duty to defend existed at all.  Thus an undeniable economy emerges

19    to simultaneous appellate review of the duty to defend and bad faith issues, whereas piecemeal

20    litigation of these issues is starkly inefficient.

21        This overlap of issues potentially subject to final judgment with those that would remain

22    triggers the Ninth Circuit's elevated standard requiring that the district court enter judgment only

23    to "avoid a harsh and unjust result."  See Morrison-Knudsen, 655 F.2d at 965.  Clarendon does

24    not suggest that entering final judgment on the duty to defend issue is necessary to prevent

25    injustice.  Rather, Clarendon's arguments in favor of entering immediate judgment center around

26    the potential of expediting the proceedings.  Clarendon points out that an immediate appeal and

27

28                           10

1    reversal by the court of appeals has the potential to terminate the litigation in its entirety.  Such

2    early termination, Clarendon submits, would save time and resources of the parties and the court.

3    Clarendon also contends that immediate appeal may facilitate settlement of the remaining claims.

4    There is no question that, were the Ninth Circuit to reverse and hold that, as a matter of law,

5    Clarendon has no duty to defend, the litigation would be substantially advanced.  This is because

6    such a result would devastate SFPUD's case.  Clarendon does not explain, however, how

7    resolution of an early appeal in SFPUD's favor would expedite settlement of the remaining

8    claims.  In any event, Clarendon does not contend that denial of Rule 54(b) judgment will result

9    in hardship or injustice for itself or anyone else.

10        SFPUD does not dispute Clarendon's contention that immediate appeal of the duty to

11   defend issue could expedite the litigation.  SFPUD does point out, however, that an immediate

12   appeal also has the potential to delay completion of the litigation.  Clarendon does not dispute

13   SFPUD's contention that if the court of appeals affirms this court's decision, and then another

14   appeal is taken following trial, the Rule 54(b) appeal will have extended the litigation by as much

15   as two years.  Clarendon argues that the court of appeals will not address the duty to defend issue

16   more than once.  Nevertheless, a second appeal to the Ninth Circuit, even without the duty to

17   defend issue, would substantially extend the litigation.

18        SFPUD contends that a delay in the proceedings to appeal the duty to defend issue will be

19   to its detriment by postponing resolution of the indemnity issue.  Such postponement could mean

20   that SFPUD would face a $1.7 million judgment in the underlying case and then be forced to

21   wait years for a decision on whether Clarendon has a duty to indemnify.

22        Clarendon's response to SFPUD's claims that the delay subjects it to hardship is that

23   such concerns are immaterial because the issue of indemnity is separate from the duty to defend

24   and is yet to be resolved.  Clarendon also points out that it has agreed to pay all reasonable

25   defense fees and costs that SFPUD faces.  While providing a defense ameliorates some of

26   SFPUD's financial woes, it does not affect the undisputed potential hardship SFPUD would face

27

28                                                    11

1  from a long delay between incurring liability and obtaining a judgment regarding

2  indemnification.

3         It is not necessary for the district court to confine its Rule 54(b) analysis to the claims

4  potentially subject to final judgment, as Clarendon suggests.  Rather, the Supreme Court has

5  called upon the lower courts to act in the "interest of sound judicial administration" of the claims

6  that would remain before the court, as well as those which might be subject to final judgment.

7  Curtiss-Wright, 446 U.S. at 8.  It would be short-sighted and imprudent for the court to ignore

8  hardship that potentially results from delay of judgment on claims that would remain before this

9  court.

10        Essentially, Clarendon asks the court to enter judgment to take a chance that the court of

11  appeals will reverse, expediting the litigation.  The potential benefit the parties would enjoy from

12  such a result would be avoidance of expending time and resources on litigation.  No one has

13  contended, however, that such expenditures impose a hardship on either of the parties.  The cost

14  of taking this chance on an early partial final judgment, however, is that any result short of

15  reversal will likely delay completion of the litigation as a whole, including the indemnity issue.

16  It is undisputed SFPUD will be prejudiced by such a delay, by facing a judgment for which an

17  indemnity decision may be years away.   The prudent course for the court to take at this stage is

18  to go forward with the litigation to its completion, rather than proceeding piecemeal and

19  gambling on a reversal.  At the completion of litigation in the district court, all necessary appeals

20  may be taken and decided together.

21               Accordingly, IT IS HEREBY ORDERED that:

22        1.    Defendant's motion for INTERLOCUTORY REVIEW is DENIED.

23        2.    Defendant's motion for ENTRY OF FINAL JUDGMENT is DENIED.

24        3.    Defendant's request for a STAY is DENIED as moot.

25  IT IS SO ORDERED.

26  **Dated:   July 24, 2006**               _____/s/ Anthony W. Ishii_____
   0m8i78                                    UNITED STATES DISTRICT JUDGE

27

28                                          12